**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEVEN BELL, individually and on behalf of all similarly situated individuals, | )<br>)<br>)<br>) Case No. 11 C 03343<br>) |
| Plaintiff, | )<br>) Judge Edmond E. Chang |
| v. | )<br>) |
| BIMBO FOODS BAKERIES DISTRIBUTION, INC., | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven Bell has sued Bimbo Foods Bakeries Distribution, Inc.[1] on behalf of himself and a proposed class, alleging that Bimbo has illegally characterized employees as independent contractors and thus has not paid them overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Illinois state law, 820 ILCS 115/9. R. 36 ¶ 1. Bell also alleged claims for rescission, unjust enrichment, and breach of contract, as well as wrongful termination under the Illinois Franchise Disclosure Act, 815 ILCS 705/19. *Id.*[2] Bimbo moved to dismiss the claims advancing theories under the Franchise Disclosure Act (Count 5), rescission (Count 3), and unjust enrichment (Count 4). Fed. R. Civ. P. 12(b)(6). R. 37. The parties then

---

[1] According to the related company's website, the company's name is pronounced "Beembo." *See* bimbobakeriesusa.com/our_brands/bimbo.html (last accessed July 2, 2012).

[2] This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for the Fair Labor Standards Act claim, and supplemental jurisdiction under 28 U.S.C. § 1367 for the Illinois claims.

stipulated to dismissing with prejudice the rescission and unjust enrichment claims (Counts 3 and 4). R. 73. That leaves the Franchise Disclosure Act (Count 5) claim for a decision. For the reasons discussed below, the claim is dismissed.

I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in his favor. Steven Bell has worked as a distributor for Bimbo and its predecessor since August 1993, selling and delivering Bimbo's bakery products to local retailers, stocking shelves, and removing stale products. R. 36 ¶ 6. Bimbo classifies Bell and others like him as independent contractors, *id.* ¶ 8, and a "distributor agreement" governs their relationship, *id.* ¶¶ 21, 23. To operate as a Bimbo distributor, Bell and others purchased the right to serve specified retail outlets within a designated territory. *Id.* ¶¶ 22, 24. The distributor agreement reserved for Bimbo the right to distribute products to "non-Outlets" in that territory. *Id.* ¶ 25.

The contracts generally set forth standards the distributors must meet, "but do not dictate specifically how these standards are to be achieved," consistent with Bimbo's characterization of its distributors as independent contractors. *Id.* ¶ 28. But Bell alleges that Bimbo instead really treats its distributors as employees and has "retained or exercised the right to control the Distributors' work in ways that go beyond the express obligations and responsibilities" laid out in the distributor agreements, listing a range of examples in support. *Id.* ¶ 30. Bell also takes issue with Bimbo's 2011 acquisition of Sara Lee Corporation's North American bakery business. *Id.* ¶ 41. Bell alleges that Sara Lee bakery products compete directly with Bimbo

products in the specified sales area, and after the acquisition, Bimbo allegedly has been marketing Sara Lee products within Bell's sales area. *Id*.

## II.

In reviewing a complaint's sufficiency, Federal Rule of Civil Procedure 8(a)(2) instructs that a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.

### A.     Choice of Law

The natural first question is which state's law applies to the dispute over the distributor agreement. The distributor agreement itself specifies that New Jersey law will control the "validity, interpretation and performance" of the contract. R. 38-1 ¶ 15.5. Yet neither side has mentioned New Jersey law; both parties have cited Illinois law and federal court cases applying Illinois law, and neither has asked the Court to apply any law other than Illinois's. In the absence of such a request, and because no special circumstances compel otherwise, the Court will abide by the parties' implicit agreement to apply Illinois law in this case. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (applying Illinois law despite a contract provision specifying Texas law, when the parties briefed and cited Illinois law and did not request that another state's law should apply).

### B.     Wrongful Termination (Count Five)

Bell alleges that by selling Sara Lee bakery products, specifically breads, Bimbo has "essentially voided, or terminated" his and fellow class members' distribution agreements, "all of which are integrally premised on the assurance of an exclusive Sales Area and the right to sell exclusively particular products to specified Outlets within the designated Sales Area." R. 36 ¶ 41. In response, Bimbo argues that Bell fails to state a claim for wrongful termination under the Illinois Franchise Disclosure Act because (1) the Act does not recognize a "constructive termination claim"; and (2) even

if such a claim exists under the Act, Bell's claim would fail because he has not abandoned his franchise. R. 38 at 7-8.

The Illinois Franchise Disclosure Act prohibits a franchisor from terminating a franchise before the expiration of the franchise term except for good cause. 815 ILCS 705/19. Illinois courts have not considered whether termination under the Act includes only actual termination or also encompasses some form of "constructive termination."[3] Although Illinois courts have not explicitly addressed this question, one can draw parallels from the Illinois courts' recognition of constructive termination in the employment discrimination context, under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq. See Stone v. Dep't of Human Rights*, 700 N.E.2d 1105, 1112 (Ill. App. Ct. 1998); *Steele v. Ill. Human Rights Comm'n*, 513 N.E.2d 1177, 1179-80 (Ill. App. Ct. 1987) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to resign involuntarily . . . ."). Although the Illinois Human Rights Act does not explicitly prohibit constructive termination based on discrimination, 775 ILCS 5/2-102, Illinois courts approved the cognizability of such claims from the general prohibitions on discrimination. *Steele*, 513 N.E.2d at 1179. In order to amount to constructive termination, an employer's conduct must have resulted in "working conditions . . . so

---

[3]Bimbo cites *Healy v. Carlson Travel Network Assocs.*, 227 F. Supp.2d 1080, 1090 (D. Minn. 2002), for the proposition that "the IFDA does not recognize *de facto* termination as a cause of action." R. 46 at 2 (italics in original). But because *Healy* is a district-court opinion, it is not binding on this Court. *Martin v. Snyder*, 329 F.3d 919, 922 (7th Cir. 2003). The opinion could, of course, have persuasive value, but *Healy* does not explain the basis for the conclusion that the IFDA does not recognize de facto termination. 227 F. Supp.2d at 1090.

difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 1180 (quotation and citation omitted). For example, a single instance of demotion, unaccompanied by any other discriminatory acts, does not comprise a constructive discharge where the employee retains the same salary and benefits in spite of any perceived reduction in responsibility. *Id.* at 1181.

Courts elsewhere have also recognized constructive termination claims under similar state franchise protection statutes. *See, e.g., Girl Scouts of Manitou Council v. Girl Scouts of USA*, 646 F.3d 983, 989 (7th Cir. 2011) (Wisconsin law); *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1181-82 (2d Cir. 1995) (Connecticut law). The reason for this, as in the employment context, is to avoid leaving "a big loophole" that would allow franchisors to force franchisees out without officially terminating them, thus circumventing the statute. *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 726 (7th Cir. 2010). In light of the analogy to the Illinois Human Rights Act, and the supporting case law interpreting other states' franchise laws, a constructive termination should qualify as a "termination" under the Illinois Franchise Disclosure Act. The Court need not, however, decide that question definitively, because there has been no termination here, constructive or otherwise.

Assuming, for purposes of this case, that there can be a cause of action for constructive discharge under the Franchise Disclosure Act, Bell has not alleged that the distributorship has terminated. That is, there is no allegation that Bell's actual distributorship has come to an end. On the contrary, Bell continues to operate the business under his Distributor Agreement. R. 36 ¶¶ 6, 23. Because Bell's

6

distributorship is ongoing, Bell cannot allege that Bimbo engaged in conduct that rendered Bell's situation so untenable that it effectively forced him out of his distributorship.

In *Mac's Shell Service v. Shell Oil Products Co.*, the Supreme Court declined to decide whether the Petroleum Marketing Practices Act—a federal statute that protects gas station franchisees—created a cause of action for constructive termination. 130 S. Ct. 1251, 1257 (2010). But if it did create such a claim, the Court held, a necessary element of the claim would be that the franchisor's conduct forced an end to the franchisee's use of the franchisor's trademark, purchase of the franchisor's fuel, or occupation of the franchisor's service station. *Id*. The statute, the Court noted, does not prohibit "[c]onduct that does not force an end to the franchise." *Id*. at 1257-58. Similarly, in *Girl Scouts of Manitou Council*, the Seventh Circuit found constructive termination when the defendant, a national scouting organization, proposed transferring a local scouting council's entire territory to other councils, effectively eliminating the local council. 646 F.3d at 990; *see also Remus v. Amoco Oil Co.*, 794 F.2d 1238, 1240 (7th Cir. 1986) (interpreting Wisconsin franchise law and describing constructive termination as the franchisor "driv[ing] the dealer out of business" and "the franchisor's making the dealer's competitive circumstances so desperate that the dealer 'voluntarily' gives up the franchise"). Bell does not allege facts that show Bimbo is driving him out of business. He argues that Bimbo's decision to market Sara Lee bakery goods, especially sliced bread, within his sales area "seriously and materially and directly undermines" his franchise agreement and "abrogates the sine qua non of

7

the 'Distributor Agreement[],'" thus "effectively terminat[ing] the franchise agreement" without good cause. R. 36 ¶¶ 75, 76. But the complaint contains no allegation that Bimbo has driven Bell out of business or made his competitive circumstances so desperate that he feels he must quit; to the contrary, the franchise remains intact.

Bell tries to overcome this hurdle by arguing that Bimbo "terminated an essential element of [his] franchise by eliminating the exclusivity of [his] sales territory." R. 44 at 11. But case law analogous to a potential claim under Illinois's Franchise Disclosure Act does not support Bell's "essential element" argument: as the Supreme Court noted in *Mac's Shell*, "a plaintiff must actually sever a particular legal relationship in order to maintain a claim for constructive termination." 130 S. Ct. at 1258. To recover for constructive discharge in the employment context, an employee generally is required to quit his or her job; to claim constructive eviction in the landlord-tenant context, the "general rule . . . is that a tenant must actually move out." *Id*. The Supreme Court saw no reason why a different understanding should apply to constructive termination claims under the federal petroleum marketing statute, particularly because franchisees could pursue state-law breach of contract remedies for franchisor actions that did not cause an end to the franchise. *Id*. at 1259. Indeed, Bell also alleges breach of contract in his complaint. R. 36 at 21 (Count Six). What Bell has not alleged is that his distributorship or franchise has actually terminated, and that is what would be required under the Illinois Franchise Disclosure Act.

Because Bimbo has not actually terminated Bell's franchise and because Bell has not alleged facts that support a constructive termination claim, he has failed to

8

state a claim for wrongful termination under the Illinois Franchise Disclosure Act. Count Five is dismissed with prejudice.

### IV.

For the reasons stated above, Bimbo's motion to dismiss [R. 37] is granted.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: July 2, 2012